Case No. 13-3654, Local 1982 International Longshoremen Association v. Midwest Terminals Of Toledo. Arguments not to exceed 15 minutes per side. Mr. Hoffman for the appellate. Good morning. If it may please the court, my name is Joseph C. Hoffman, Jr. I represent the union, ILA Local 1982 Longshoremen in this matter. I do request 3 minutes for rebuttal. In the lower court, the union had sought confirmation of an arbitration award. The employer in return had sought to have that award vacated. The lower court decided to vacate the award, and that's why we're here on appeal. We believe that ruling was clearly erroneous. The main issue on this appeal is whether the arbitration panel acted within its authority by deciding the union's grievance. The case law, I think it's very well settled in the briefs that the courts will, they abhor interfering with an arbitration award, and only in the most extraordinary circumstance will they do so. That's set forth in Michigan Family Resources v. SEIU. It's also well stated that, or well settled, that federal courts' review of an arbitration award is not just limited, it's very limited. And that's set forth by the United States Supreme Court in the Garvey case, Major League Baseball case. Does the court deny when the question is which arbitration process governs? We believe, yes, it does, Your Honor. It does. Regardless, in this particular case, and we'll get into this in a minute, there's an extremely broad arbitration clause. And when you have that kind of clause, the presumption is in favor of arbitrability. And to get to the facts, and I think this will help, in December of 2011, the union files a grievance. Now, it's critical to focus on what the grievance was about. This is critical. The union filed a grievance saying that the master agreement was violated by failing to pay the required contributions to jointly administered pension and welfare plans that are governed by the time of the grievance, the union and the employer in this particular case are signed to two contracts. There's the master agreement. Master agreements are pretty common. You see them a lot in the Teamsters world, with the National Master Freight, with UPS. You also see them in the longshoreman's world. In this particular case, the master agreement covered the Great Lakes region, the Great Lakes area. And the reason for the master, anybody wanted to sign on in Midwest, this particular employer chose to sign on to it. And what it does is it sets a uniform standard to give a level playing field for the employers along that Great Lakes. So they all know, hey, we're paying a certain wage amount. We're paying fringe benefits. We know our competitors here in Toledo, Ohio, are paying the same thing. Now, sure, there are unique issues that are specific to particular geographic locales. And those are specifically dealt with in the local agreements. But this is critical. And for some reason, your honors, the lower court, I don't even think mentioned it in the decision, there's a supremacy clause in the master contract. And I can read it for you, but it's in section two, right under, I believe it's the recognition clause. And it says the master agreement is an agreement to the extent it defines the terms and conditions. Those terms and conditions will control. And it goes on to talk about the local working agreements, and those are, that's, and it's common sense. That agreement is intended to supplement or fill in gaps, certain operational issues. But that's it. But the core terms are defined by the master agreement. And that's in the contract. That's in the master contract that the bargaining parties agree to. And to go into this a little more detail, on this particular point, the master agreement specifically, there's no question, expressly defines the required wage rates for the longshoremen. And it also expressly defines and states that contributions, I think at this point in time it was $14.35 per hour, in total, must be made to ERISA benefit plans, pension and health and welfare. What it goes on to say is, the allocation of that contribution, the $14.35, that's decided by the local parties. They can decide, hey, ten bucks of that goes to the pension, the rest of it goes to health and welfare. If anybody's familiar with defined benefit plans these days, they need all the money they can get under PPA. But anyway, lest we digress. I'm so confused. I'm sorry. Which agreement is supposed to govern this? And just looking at section 25A1 of the master agreement. Yes, sir. Which is recited on page 16 of the red brief, says that a difference or dispute relating to the meaning or interpretation of the application or the application of the provisions of a local agreement and into the local union affiliated with, you know, the acronyms that you use. Yes. Shall not be deemed to be a grievance here under the master agreement and shall not be subject to the settlement and arbitration procedures provided for under this section 21, but shall be resolved under the grievance and arbitration procedures provided under such local agreement. And now what happened was they grieved the resolution was under the local agreement, right? No, no. What happened? And you hit the nail on the head. There are two clauses in that arbitration provision of the master agreement. The initial clause states that grievances that concern violation of the terms of the master agreement shall be adjudicated here under the master agreement grievance procedure. Let me repeat. Grievances that impact the terms and conditions of the master agreement will be adjudicated under the master agreement. In our particular case, the issue was whether the employer violated the master agreement section. I think it's 5.5. 5.5 of the master agreement expressly defines contributions having to be paid to these ERISA plans. The union said, hey, you didn't pay contributions to ERISA plans. We're filing this grievance under the master contract. That's a defined core term under the master contract. What the lower court said was, yeah, but in the grievance, the people at the time, they for some reason referenced 18.1 of local contracts, so then it must mean that both contracts are implicated and therefore the has to be decided under the local agreement. That's incorrect. That's erroneous. And the reason why is 18.1 of the local agreement clearly says in that contract as well that the level of contributions is dictated by the master agreement. There's expressed language in 18.1 that says that. And so you kick it back to the master contract even if you look at 18.1. But at a minimum, the arbitrator here looked at all this mess and made the judgment that he could decide it under the master agreement. Yeah, it's a panel, but the panel here made the They might have gone the other way. They might have disagreed with the argument that you just made, but they had the opportunity of both of them before you. Your Honor, that's exactly, the point is. You don't have to convince us that you're right. You just have to convince us that they weren't off the moon. Exactly. I mean, the fact of the matter is here, there can be no argument that section 5.5 of the master contract was specifically implicated by the grievance. It says in the master contract. Was the local agreement also implicated? No. The local agreement can't be implicated because the core terms and conditions. What do you mean it could be? They can't. Let me explain. What do you mean it can't be? Because of the supremacy clause at section 2 of the master contract. It says that to the extent the terms and conditions are defined in the master, that's what controls. So the local agreement can say whatever it wants, but it's not going to supersede. It's going to be trumped by the master contract. The master contract at 5.5 defines, you have to pay $1435 to a risk of benefit plans. End of story. The local agreement can say whatever it wants. It doesn't matter. And so that's where I'm just baffled. Well, the dispute here was over the amount not being paid, right? Yes. Being kept in the employer's general treasury or whatever they did with it, yeah. The dispute was... And there's nothing in either agreement about that. Well, there's, in the master agreement, it specifically says the contributions have to be paid to ERISA benefit plans, trust funds that are governed by ERISA that are formulated, effectively Taft-Hartley plans to the extent we're familiar with that concept. That's what the master agreement says. The grievance said, Midwest, you didn't do this. You know, you never set up these trust funds. You never made these contributions. Your treasury is not an ERISA. Yeah. I mean, that's the thing. And to me, it's just so clear cut. Yeah, and you might be right or wrong. You might be wrong. And let the employer come in there at the arbitration and say, Mr. Arbitrator, we made all the contributions and this is, you know, everything we did was right. God bless them. They can make all those arguments, but they can't get around the fact that it's a grievance procedure under master. The panel had the absolute authority to decide this case. They didn't go out on a limb. They didn't go outside their authority. They were acting clearly within their authority. Let me ask you this. In some of the correspondence back and forth, Midwest keeps saying that the union's grievance is being, is currently being processed via the local grievance procedure and is in arbitration. Is that accurate or is there any reason, any basis for that whatsoever? No. The grievance, the union was adamant from day one. This is a master contract. Don't tell me what the union's position was. Tell me, and I'll ask your adversary, is there any basis for that statement? No, there's no basis. Is there some local arbitration of any sort that they're converting to? Not of this case, absolutely not. So there are no competing arbitrators' determinations of their jurisdiction? No, Your Honor. No, Your Honor. And if I may, I'm probably out of time here, but I also wanted to just touch on the fact, and we've addressed the core argument, I think we've addressed it thoroughly and fully, but I also wanted to say there is case law as well of the failure to exhaust. And we've cited some cases in the briefs, and I'm not going to belabor it, but the decision came out by the panel. That was, I think, step two in the grievance procedure. If the employer didn't like the decision or they wanted to contest it, they could have gone to step three, which was an expanded panel, and then I think step four was a neutral arbitrator. The employer had noticed that this was before the local grievance. Absolutely. And the employer didn't show up. Didn't show up. Well, isn't that somewhat of a problem, not showing up, not making it clear? To us, it was a problem. And they had, and if you've read through the papers, you know, which I'm sure, I know you did, you know, there were so much correspondence to the employer, giving them a second chance, you know, we have this information, do you want to respond? And the panel's sending them letters, and they just... Counsel, I think your time is up. I'm sorry, thank you. Thank you for your time. More questions? Okay, thank you. Okay. You have three minutes for rebuttal. Your Honor, may it please the Court, my name is Ronald Mason, I represent Midwest Terminals in this matter. Let me first of all point out to you that Midwest has never disputed the fact that this particular grievance that was filed on December the 9th was subject to a grievance and arbitration procedure. The only question is, which one? And in this particular case, the grievance that was filed was a local grievance on the 1982 grievance form. It is the form that is used every day by the union, and when they file grievances, they file it on this form under the local agreement. It was a local agreement grievance and form. It was submitted to the company during negotiations for a local agreement. What does the description of the grievance say on this form? It gives the heading, and it says local 1982 on it. No, I understand that. I assume that there's not another form for the master agreement. I have no idea, ma'am, because we've never had a grievance that has been filed under the master agreement. The only grievances that we've ever had have been local grievances, as was this one. So this is the only form? This is the only form that the company has seen. And what does the description of the grievance say? It discusses the fact that the master agreement is in conflict with the local contract and cites the local contract section. No, that's not the form. Doesn't it begin violation of master agreement? Yes, sir, and then if you look further, it describes the provisions. It says that has been violated the and it says the master agreement section and the local agreement section. It makes specific reference to the local agreement. And here we have not only the grievance form that was used, but the company processed it under the local grievance. It went and denied it under the local grievance and the procedure. And the language that's in dispute here has been in this collective agreement since 1993. The company signed a long-term agreement in 2006 that contained this same language in the local agreement. Subsequently, the master agreement came on and changed the language in the master agreement. But the master agreement has a situation where when you start out, you have to understand that under traditional labor law and arbitration, when you go to an arbitrator, an impartial arbitrator, one of the fundamental tenets of arbitration law is you cannot get in arbitration what you cannot get in negotiations. That is that if you try to negotiate something and you do not get it, you can't go to arbitration and get it there. Was your client signatory to the master agreement? He was signatory to the, yes, in the sense of that, yes. He had made a promise that he would pay into an ERISA jointly trustee Taft-Hartley benefits plan. He had made the agreement that the trust fund would be there under the master agreement, but it was also governed by the local agreement and its issue is that the grievance was of a violation of the master agreement's specification that there would be payments into ERISA qualified benefit plans. And that's the description of the grievance. I'm struggling to understand why you would think that doesn't arise under the master agreement because it is the master that in fact establishes the obligation. It is the master agreement that is there that was disputed as with respect to the local agreement as to which governed under these terms. And the local agreement is. I'm struggling to understand what you mean by that because the master agreement establishes the obligation. Now I understand that the local agreement gives the local entities the ability to make some decisions about how to allocate the money among established plans, but it is the master that obligates the creation and the payment into those ERISA plans. So help me understand why this is not a complaint under the master agreement. Because it requires an interpretation of the local language. The master agreement specifically in the grievance and arbitration procedure as Judge Merritt pointed out specifically says that any and it says any grievance that is involves the application interpretation of a local language. And again ma'am if I may it's it's very very specific exclusion. Further down in my argument here that here it is the master agreement and the grievance and arbitration language. And you have to understand under Warrior and Goff and the Steelworkers Trilogy we are only required to arbitrate what we have agreed to arbitrate. But you are signatory to the master agreement and the master agreement says should any difference or dispute arise relating to the meaning or interpretation or application of any of the provisions of this agreement you use our grievance procedure. So you're signatory to that and that's the introductory clause. If you go further down in that language it specifically says that the master contract specifically excludes in the grievance language from the grievance the meanings and interpretations or applications of local agreements are not a grievance under the master agreement. Yes sir. Okay so in one sense though wasn't your remedy to say in the in this grievance we'll arbitrate anything about the master agreement but you should exclude anything about the local agreement but then that could have been thrashed out. But the local agreement your honor but the master agreement it we're talking about is the interpretation and the application of the language in the local agreement that says that it's an unfunded liability. That's what you say that's what you say it is but they say it's something different and it would seem that that if you had a point would have been the point that should have been raised. But let me ask you this though the same question I ask your adversary where you're some of your documentation says oh this is all being handled in local grievance arbitration and what is the basis of this because as I understood it they filed on December 9th you provided a response on December 12th. Yes sir. And by December 19th there's this email from flag saying they have filed a grievance with the GLDC. I assume that means they took your response and in their view took it up through the master levels is that correct? Well we don't know what what we do know is is that they filed it locally we responded locally. They then said that they are going to process it under the master agreements procedure. If query passing the question of what's written on the top of the form if it was a master agreement grievance would they not have given it to you in exactly the same way in other words was there some other mailbox to send it to? If you look at the affidavit of Christopher Blakely he lists grievance after grievance after grievance after grievance where language is referenced in both the master and the local. I'm asking you procedurally. Procedurally if you're the union and you say as they did here it violates the master agreement where would they have sent that grievance would they not send it to the employer initially? Well the employer would have received some sort of a grievance that would have become from Cleveland where they they run the office that would have been on some sort of a master form. You're saying you've never seen. The company has never seen a grievance from the master contract. We've never seen one. Nobody ever litigated. Nobody's ever given us one your honor what at what every arbitration we've got several cases of going to arbitration we've got several cases and grievances. If you were the union yes sir being as smart about labor law as you are where would you file such a grievance? Don't you file it with the employer? It starts out being between. Yes and we have never received. I know you've never said yes you've never seen one that you recognized as such but they didn't do something wrong by filing this with you did they? We haven't received it. We received the local grievance. You received this piece of paper. Yes sir. So we agree with that. Yes sir. That whether you call it local or master they sent it to the right place. Yes sir. All right. I'm not. Okay that's that's that's all. We're not. That's all I. But now why why did you say in all of these documents that this was being processed to arbitration at the local through the arbitration or you collectively maybe not you personally? Mr. Blakely is not an attorney and I think he was simply making reference to the fact that we have a grievance and arbitration procedure that we would be processing this through and he was asking for their response under that local agreement to that. Is there anything that makes arbitration exclusive under the master agreement or under the local agreement in the sense that are there some things that could be arbitrated under either because references in the contract are made or assumptions made that would touch upon the the question in in both so that you think that they arbitrate you could arbitrate under either agreement? It can choose no no your honor I don't believe that. Why? Does it say that somewhere? Yeah well it does because of this specific exclusionary language. The language the case law is replete that where you have a grievance procedure and it has a specific exclusion in it that you do not go with the broad grievance language because you have a specific exclusion so that if you have a situation. I mean when you have an agreement like these that interlock but unclearly it seems to me it's a mess I mean it's it ought to be a lot clearer than it is so you've got you've got a situation here where the parties haven't made it where there's ambiguity well why can't you file under either? Well your honor when you are sitting and saying that the specific contract language in the local contract is incorrect it doesn't seem that there's an ambiguity there that's about Judge Helmick clearly said this language is specifically excluding interpretations and applications of the local agreement. Did you raise that argument to the master agreement panel? I believe the argument was made by Mr. Blakely he had you have the correspondence I did not write it no I was not even employed by no one no one appeared before the panel. No ma'am. No one challenged the panel's jurisdiction. Well actually Judge Helmick said that there was numerous correspondence from the company challenging the ability of them and contesting it. So challenging it to the arbitrator. Well there I mean technically it's not an arbitrator it's a second step grievance in a panel and the situation was such that what happened was that in 2013 the union realizing that if we go to arbitration on this and we just tried to get the local agreement to change and they failed. Well I'm not asking you that question I'm asking you whether under our existing case law under Michigan family whether there was a challenge that came before the arbitrator because what you have is you have a panel properly constituted created under the master agreement presented with a grievance under the master agreement and so you have this putative jurisdiction to hear this and so my question to you is did anyone from Midwest go to that or inform that arbitrator that there was a question regarding the panel's ability to If you look at the correspondence from the company to the to the union as well as to That's not what I'm asking. I'm asking if you challenged it before the arbitrator. What I saw in all these What I saw in all these documents were numbers of letters from one of the panel members asking Midwest actually begging Midwest to come forward and appear after that time had run to make your arguments by letter or correspondence to me. I will hear them delaying receipt of that and yet never having a challenge. What under our case law would then call in to question the ability of that panel to make a final and binding arbitral decision? As Judge Helmick pointed out that there were several correspondence to the union as well as to I believe Mr. Fisk advising him that the grievance that was being held was not properly before the master agreement that it was a local The problem for me is you can write your opposing counsel as much as you want about what you think but if you don't tell us then you've not brought it to the court. But that is the but but see that's there's a difference without a distinction. If you are the arbitrator on the panel, it is not a judge. It is not an FMCS appointed arbitrator that you're corresponding to. You are corresponding to the decision makers when you're writing the letters because it's a step two. It's being heard by the local, it's being heard by one of the members there, Mr. Fisk. Okay I thought it was flag and Sierra I thought were the panel at this point is that right? Yes I believe so. All right anything else? Thank you counsel. You'll have your three minutes for rebuttal and you might confirm or deny whether I'm right that flag and Sierra are the panel. You are I will confirm that you it was flag and Sierra that's absolutely correct. As far as rebuttal I'm just going to make a few a few points. The one is the the the point was brought up about that the the argument is that the this grievance was somehow excluded and that is fundamentally fundamentally fundamentally incorrect. The the law in in the sixth circuit is very clear and we have the 2010 case of IAM local 1943 versus AK Steele and what what that case holds for and what the circuit holds is that with broad arbitration clauses and there's no question we have a very broad arbitration clause here as you had you pointed out there is a presumption of arbitrability and only an express exclusion of an issue will keep it from the arbitrator. So let's turn that to our facts. The issue we have is whether contributions were made to ERISA benefit plans. That language is specifically included within the master contract. So it's not excluded it's actually included it that is a material term of the of the master contract. So then the master contract under the grievance and arbitration machinery says that if there is a dispute over the interpretation of that particular clause it is subject to the master agreement arbitration clause. To me and I think based on the case law there is no lack of clarity here. This case fits squarely before the panel that decided it. They acted reasonably they acted appropriately and the decision should be should be confirmed. It could have been arbitrated under either agreement right? I don't I don't I don't believe that. I think since it's a master contract since the master contract issue the clause says master contract issues are arbitrated under the following procedure and it talks about. If you had gone through the local procedure and won you'd probably be saying that it could be under either. I mean I'm not gonna. Because the the determiner of whether you had whether that panel or that So that's what we're talking about here whether under Michigan family that arbitral panel erred. Correct and and whether that arbitral arbitral panel had the authority to to rule on the case based on the arbitration clause which it clearly did. We fit there there was an aberration here was not an aberration as defined in Michigan family. All of the three tests have been met here. Am I right though that presumably the argument could have been made clearly to the master panel arbitrators. Look you can arbitrate anything about the master agreement but you can't arbitrate anything about the local agreement throw out that and you could argue that that would throw out everything but then you would get an answer to that clear question. Is that fair? That is that is very fair you could I would I would say bifurcate you could attempt to bifurcate that portion if there's an argument that there's some local provision implicated the employer certainly could have made that argument to the master panel said bifurcated take that out you have no jurisdiction wasn't done here. Thank you counsel. Thank you so much. Will be submitted clerk may call the next case.